UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SHEA FALGOUT, ET AL. | * | CIVIL ACTION NO.: 20-cv-0057 |
|            Plaintiff | * | |
| | * | JUDGE: Lance M. Africk |
| vs. | * | |
| | * | MAGISTRATE: Janice van Meerveld |
| DILLARD DEPARTMENT STORES, INC. | * | |
| | * | |
| | * | |
|            Defendant | * | |

*************************************

## MEMORANDUM IN SUPPORT OF MOTION TO STRIKE SHAWN JOHNSON

MAY IT PLEASE THE COURT:

Higbee LANCOMS, LP ("Dillard's") submits this Memorandum in support of its Motion to Strike Shawn Johnson. We attach the following as exhibits:

    Ex.1: Photo of Escalator Combs

    Ex.2: Dillard's Store Surveillance Video

    Ex.3: Shawn Johnson Report

    Ex.4: Shawn Johnson Deposition

    Ex.5: Lerch Bates Report of 9/19/18

    Ex.6: Shea Falgout Deposition

    Ex.7: Daily Escalator Start-Up Log

    Ex.8: Corporate Deposition of Dillard's

**I. FACTS**

Shawn Johnson is plaintiffs' purported escalator expert. He is a high school graduate, with one and one-half years of college. (Ex. 4, Depo. of Johnson, pp.21:23-22:3). He is not an engineer, lawyer, medical doctor, biomechanical engineer, or biomechanical expert. (Ex. 4, pp. 19:23-20:8). On this case, he has reviewed some documents, and he conducted a site inspection almost two years post-accident. Neither he nor anyone else has performed any testing, computer

modeling or accident reconstruction. (Ex. 4, p. 36:5-19). As of his deposition on September 27, 2020, he had not even read a single transcript of any deposition taken in this case. (Ex. 4 13:13-15). He has never worked on a case involving a hand or finger being entrapped by a step or comb plate at the bottom of an escalator. (Ex. 4, pp.105:19-106:11).

This accident occurred on September 18, 2018, at the bottom of the down-escalator that carries passengers from the second floor to the first floor. On the floor at the bottom of this escalator, like every escalator, is a row of yellow combs with teeth that sit below the stair tread. (Ex. 1; Ex. 5, p.4). These combs prevent a shoestring, package, or other object from lodging in the escalator, and they nudge the rider's foot over the joint where the escalator meets the floor.

Fourteen-month-old Jayden Falgout was injured when he tried to run up the down-escalator. At twenty pounds, he was simply "too heavy" for his father to carry. (Ex. 6, p. 23:1-18). After repeatedly scrambling toward the escalator, only to be grabbed at the last second, this time, unfortunately, he made it. (Ex. 2, Notice of Manual Attachment, Dillard's Store Surveillance Video. The accident occurs at 10:56:35 - 10:56:45 a.m.; Jayden's prior attempts to reach the escalator are at 10:52, 10:53:33 and 10:55:55, https://gjtbs.sharefile.com/d-sc274b7267704285b).[1]

Baby Jayden took one step onto the escalator and fell. (Ex. 2). Somehow one or two fingers on his left hand were momentarily lodged in the steps or combs. The camera angle does not allow us to see exactly how the injury occurred, and there were no eyewitnesses to how his fingers were caught. The escalator's safety switches caused the escalator to stop almost

---

[1] We note that the footage is time stamped 10:56 a.m. but the time was actually about one hour later, just a bit after 12 noon. A hard copy of the video will be filed with the Clerk of Court and delivered to Your Honor's Chambers.

2

immediately. In fact, his father grabs him and pulls him up within a couple seconds of his falling, and the escalator had already stopped by the time he does that. (Ex. 2).

The escalator was cordoned off until the next day, when independent inspectors from Lerch Bates inspected the unit. (Ex. 5, Lerch Bates inspection report; Ex. 4, pp.47:24-48:4; Ex. 8, pp.41:22-42:7). Lerch Bates is a third-party inspection company. (Ex. 4, pp.48:10-13). Mr. Johnson regards them as professional, comprehensive, thorough, knowledgeable and careful. (Ex. 4, pp.51:17-52:4). Mr. Gene Shanks, the Lerch Bates inspector, explained that:

> [W]e tested both stop switches, upper and lower. Both worked as designed and per Code requirements…All devices worked as designed and within Code requirements. I found no reason to leave the unit out of service. Dillard's management was contacted and the unit was returned to normal service. In my opinion, the video indicates that this incident was not caused by equipment malfunction. The escalator worked as designed and within Code requirements.
> (Ex. 5; Ex. 4, p.4).

And while Mr. Johnson laments that Mr. Shanks could have gone into more detail in his report, he also concedes that Mr. Shanks did a "thorough investigation." (Ex. 4, p.54:14-23). And he has no facts to contradict Mr. Shanks' findings. (Ex. 4, p.64:12-15). To the contrary, Mr. Shanks' findings are consistent with the inspection that Dillard's did on the day of the accident before the store opened for business. (Ex. 7).

We attach Mr. Johnson's report as Exhibit 3. He reached several "Findings," which fall into one of three categories:

1. Dillard's was negligent because it did not modernize this escalator to add a comb impact safety switch, which is found on more modern escalators (Ex. 3, p.8 - Findings 5, 6 & 7);

3

2. The upthrust switch either malfunctioned or was out of adjustment (Ex. 3, p.8 - Findings 1 & 2); and

3. The teeth of the combs sat above the stair tread, when they should have sat below them (Ex. 3, p.8 - Findings 3, 4, 8).

Not listed in his Findings, but obscured in his report, is a conclusion that if Dillard's had installed additional safety devices, Jayden's injuries would have been "reduced." (Ex. 3, p.7 - "Had Dillard's upgraded the escalator and installed the combplate impact switches…then the escalator would have stopped, reducing Jayden's injuries."). Below we address each opinion in the context of FRE 702, and demonstrate to the Court that Johnson's opinions have absolutely no factual support, and the medical causation opinions fall far outside his purported expertise. As such, the Court should preclude Mr. Johnson from testifying.

## II. THE LAW

Rule 702 of the Federal Rules of Evidence provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.* provides the framework the district court must use to determine whether expert testimony is admissible under FRE 702. *Peters v. Nissan Forklift Corp. N. Am,* 2008 U.S. Dist. LEXIS 123319 at *3-5 (E.D. La. 2/1/08) (*citing Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 243 (5th Cir. 2002)). The Court applies a preponderance of the evidence standard when determining admissibility under FRE 702. *Everler v. Ford Motor Co.*, 2017 U.S. Dist. LEXIS 124084 *6

(E.D. La. 8/7/17). The Court must make a preliminary assessment of whether the testimony is both reliable and relevant. *Id.*

Several non-exclusive factors are relevant to the reliability inquiry, including (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Id. citing Burleson v. Tex. Dept. of Criminal Justice, 393 F.3d 577, 584* (5th Cir. 2004). As to relevance, the question is whether the proposed testimony is relevant not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue. *Id.* at *5 (*citing Bocanegra v. Vicmar Servs., Inc.,* 320 F.3d 581, 584 (5th Cir. 2003) (internal quotations omitted)). Furthermore, the lack of reliable support for an expert's opinion may render it more prejudicial than probative, making it inadmissible under FRE 403. *Peters,* 2008 U.S. Dist. LEXIS 123319 at *12 (*citing Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

Arguments regarding the admissibly of expert testimony often go to the weight of the testimony, not its admissibility. But "if the source upon which an expert's opinion relied is of such little weight, the jury should not be permitted to receive that opinion. Expert opinion testimony falls into this category when that testimony would not actually assist the jury in arriving at an intelligent and sound verdict. If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury." *Id.*; *Mac Sales v. E.I. du Pont de Nemours & Co.,* 1996 U.S. Dist. LEXIS 3199 *4-6 (E.D. La. 3/11/96).

**III. THERE IS NO FACTUAL SUPPORT FOR MR. JOHNSON'S OPINIONS**

Mr. Johnson's Findings can be grouped into three categories:

1. Dillard's was negligent because it did not modernize this escalator to add a comb impact safety switch, which is found on escalators manufactured more recently. (Ex. 3, p.8 - Findings 5, 6 & 7);

2. The upthrust switch either malfunctioned or was out of adjustment (Ex. 3, p.8 - Findings 1 & 2); and

3. The teeth of the combs sat above the stair tread, when they should have sat below them (Ex. 3, p.8 - Findings 3, 4, 8).

In addition, he offers gratuitous medical causation opinions that if Dillard's had installed additional safety devices, Jayden's injuries would have been "reduced," and with a proper comb plate setting, Jayden "would not have been injured." (Ex. 3, pp.7.8). We address each in turn.

A. **Mr. Johnson's opinion that Dillard's had a duty to modernize the escalator is based on his subjective belief, unsupported by any regulations, rules, facts or evidence. It is also in conflict with Louisiana jurisprudence. This opinion therefore violates FRE 403.**

The escalator at issue met the industry standard to which it was designed. That industry standard is the applicable provision of the American Society of Mechanical Engineers ("ASME") Code. (Ex. 4, p.120:8-14). Since this unit was installed in 1967, the applicable Code year is 1965. (Ex. 4, pp. 29:16-23; 30:9-14). Thus, to evaluate whether the unit performed as designed, we must look to A17.1-1965. (Ex. 4, p. 32:24-34:3); *see also Edmison v. Caesars Entm't Co.*, 177 F.Supp.3d 972, 980-981 (E.D. La. 2016) (rejecting plaintiff's argument that the owner had a duty to install safety devices not required by the Code in effect when the unit was installed).

6

As a unit installed in 1967, this escalator had various safety switches that would turn the unit off in the case of an accident. Those safety switches are there to protect people when using the machine as intended. (Ex. 4, p.69:8-12). Mr. Johnson does not know which safety switch caused the escalator to stop in this accident. (Ex. 4, p. 45:12-16). Since he does not know which switch caused it to stop, he cannot opine that the unit failed to operate as it was designed. (Ex. 4, p.45:17-22). He is left with various questions that can never be answered; in his view, the Lerch Bates inspectors who inspected the unit on September 19, 2018 did not include enough detail in their inspection report. (Ex. 4, pp.45:23-47:3). Somehow he gives that opinion, while also recognizing Lerch Bates as professional, comprehensive, thorough, knowledgeable and careful, and admitting that Mr. Shanks did a "thorough investigation." (Ex. 4, pp.51:17-52:4; p.54:14-23).

Nevertheless, unable to conclude that the unit failed to operate as designed, Johnson resorts to opining that the escalator should have been "modernized" with a comb plate impact switch. (Ex. 4, p.90:4-11; Ex. 3, p.8 - Finding 7). He admits, however, that there is no ASME Code that mandates Dillard's install such a switch. (Ex. 4, p.95:17-20). Of course there isn't, because such a mandate would hold the owner to an ASME standard that did not even exist when the unit was installed, which, as Mr. Johnson explained, is the ruler by which we measure Dillard's compliance with industry standards. (Ex. 4, pp. 29:16-23; 30:9-14; 32:24-34:3; 120:8-14). (And, as the Court will see below, he offers no facts to demonstrate that the installation of a comb plate impact switch would have prevented Jayden's injury.) The fact is that this escalator has performed as designed, with no similar incident before Jayden's accident. (Ex. 8, pp.31:20-32:5).

Simply put, Johnson's opinion that Dillard's should have added additional safety switches is not supported by the applicable industry code, nor any other standard, regulation, law, statute, or rule. And, it is inconsistent with Louisiana jurisprudence on the issue. *See Edmison v. Caesars Entm't Co.*, 177 F.Supp.3d 972, 980-981 (E.D. La. 2016) (Court held that Caesars had no duty to add additional safety features advocated by plaintiff – yellow demarcation lines on the steps – where the escalator was in compliance with the relevant safety codes). As such, the Court is presented not with an opinion supported by facts or reliable reference to objective sources or standards, but only with Johnson's subjective belief based on unsupported speculation.

A personal belief standing alone does not satisfy the reliability test under *Daubert*, nor does it offer helpful expert assistance to the jury. *Peters v. Nissan Forklift Corp. N. Am.*, 2008 U.S. Dist. LEXIS 123219 at *5 (E.D. La. 2/1/08) *citing Bocanegra v. Vicmar Servs., Inc.,* 320 F.3d 581, 584 (5th Cir. 2003); *Thomas v Chambers*, 2019 U.S. Dist. LEXIS 65900 at *5 (E.D. La. 4/17/19) *citing Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000). Moreover, such unsupported beliefs are more prejudicial than probative, violating FRE 403. *Id*. at *9. For these reasons, Johnson should be precluded from testifying about whether Dillard's should have added additional safety switches to its escalator.

    **B.** **There is no evidence that the upthrust switch malfunctioned or was out of adjustment; thus his opinion is unreliable, irrelevant and violates FRE 403.**

In his Findings Nos. 1 and 2, Johnson opines that the upthrust switch malfunctioned or was not properly adjusted (he uses those phrases interchangeably). He cites no facts in his report to support that opinion. His deposition under oath reveals why. At deposition, Mr. Johnson admitted that he has no facts to support such a conclusion:

>Q: My question is, do you have any evidence, any facts to support the assertion that the upthrust switch was not properly adjusted on the date of accident?
>
>**A: Not the date. No. That's what I'm complaining about.**

(Ex. 4, pp.79:24-80:4).

>Q: Do you have any evidence that the upthrust switch was not properly maintained on the date of the accident?
>
>A: **No. Other than my site visit [summer 2020] showed that the switch had not been touched in a while and it was not adjusted properly.**

(Ex. 4, p.80:8-13).

>Q: Do you have any evidence that [the upthrust switch] was out of adjustment on the day of the accident?
>
>**A: Again, we answered that, and the answer was no, I don't – do not know.**

(Ex. 4, p.155:24-3).

Mr. Johnson tries to explain why, despite no supporting evidence, he will not withdraw Findings 1 and 2. (Ex. 4, p.80:14-24). While his explanation is hard to decipher, it appears to come down to him demanding that Dillard's prove a negative. In other words, while Lerch Bates found that all safety devices were working, its report gives detail that is insufficient for Mr. Johnson, so now Dillard's must prove that the device did not malfunction or was not improperly adjusted. (Ex. 4, p.81:3-22). Thus, the burden of proof falls to Dillard's. That is not the law.

The Court may exclude expert testimony if it lacks adequate foundation. *Mac Sales v. E.I. du Pont de Nemours & Co.,* 1996 U.S. Dist. LEXIS 3199 at *4 (E.D. La. 3/11/96) *citing MAC Sales, Inc. v E.I. du Pont de Nemours & Co.,* 24 F.3d 747, 752 (5th Cir. 1994). The testimony cannot be based solely on speculation or conjecture. *Id.* at *5 *citing Lewis v. Parish of*

*Terrebonne,* 894 F.2d 142, 146 (5th Cir. 1990) and *Eximco, Inc. v. Trane Co.,* 748 F.2d 287, 290 (5th Cir. 1984). If an expert's opinion is fundamentally unsupported, then it offers no expert assistance to the jury. *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

Here, Johnson admits that he has absolutely no evidence to support his opinion that the upthrust switch malfunctioned. It is just rank speculation. In the same breath that he opines that the upthrust switch malfunctioned or was out of alignment, he concedes he has no evidence to support his conclusions. Thus, once again we are left only with Johnson's guesswork, which is unreliable, irrelevant, and unfairly prejudicial under FRE 403. These opinions should be excluded.

### C. There is no evidence that the comb teeth sat below the stair tread.

Johnson's next baseless theory is that the comb teeth sat above the stair tread when they should sit below the stair tread.[2] (Ex. 3, p.3 (for reference); Ex. 3, p.8 - Johnson's Findings 3, 4, 8). Once again, his report is devoid of any facts to support Findings 3, 4 & 8. And, once again, his deposition testimony explains why. Johnson feels that just because the accident occurred, the comb plate must have been improperly adjusted (i.e. sitting above the stair tread). (Ex. 4, pp.87:4-11; pp.88:23-89:4; p.112:11-17). In other words, the fact of the accident occurring is proof of how and why the accident occurred. Johnson seeks to hold Dillard's to a strict liability standard that the law does not impose.

His unrestrained circular logic allows him to reach conclusions without regard for factual support. To him, his conclusions seem obvious. For example, Johnson concludes that Jayden's finger was skewered by a comb tooth. (Ex. 4, p.99, second-to-last paragraph). During the incident, one of the comb teeth did break off. How that occurred, or why that occurred, no one

---

[2] Johnson uses the descriptions "above the stair tread" and "out of adjustment" interchangeably. (Ex. 4, pp.103:14-24; 112:11-17).

knows. Mr. Falgout, for example, thinks that Jayden's shirt may have gotten caught under the comb, breaking the comb when he jerked Jayden up. (Ex.4, pp.29:22-30:2). The lack of evidence, however, will not stop Johnson from brazenly asserting a "finding" about it. Under oath, though, he clarifies that his assertion is just another opinion with no facts to back it up. (Ex. 4, p.98:25-99:24). Likewise, astonishingly, on further questioning, he totally retreats from his assertion that the comb teeth sat above the stair tread:

> Q. Do you see the circular nature of your argument? You say, I'm an expert. I conclude that the comb plate was up, that the teeth were higher than the tread. Well, how do you know that? Because of the fact of the accident.
>
> A. **I did not say it was above the tread**. I said it was not adjusted properly.

(Ex. 4, pp.100:200-101:2) (emphasis added).

> Q. So it is your opinion that the comb teeth sat above the tread?
>
> A. **Again, possibly**. That's how his hand got underneath there.

(Ex. 4, p.102:3-6) (emphasis added).

> Q. And as we talked about before, the only evidence you have of that is the fact of the accident. You believe that the accident could not have occurred if the comb teeth had been set below the tread, correct?
>
> A. Right. It should have lifted that object out. That's correct.
>
> Q. Have you done any testing or asked, for example, another expert of another discipline, like an accident reconstructionist, an engineer, a biomechanical expert, to test that hypothesis, to see whether, in an escalator where the combs are set below the tread, an accident like this with a 14-month-year-old's tiny fingers could occur? Have you done any testing like that? Have you sought the opinion of a qualified expert in that regard?
>
> A. No.

(Ex. 4, p.104:4-22)

Despite Johnson's fairytales, the fact is that all of the evidence points to properly-situated comb plates. Dillard's escalator technician, Lawrence Robert, inspected the escalator before the store opened on September 18, 2018 and found it to be in proper working condition. (Ex. 7). Mr. Johnson confirms that the daily start up inspection that Dillard's uses is similar, i.e., industry standard, to the practice followed by its peers such as Macy's, JC Penney and Nordstrom. (Ex. 4, p.145:3-11). Mr. Falgout, along with Jayden, Jayden's mom and many others, rode down the escalator prior to the accident. No one tripped on any combs protruding above the steps. (Ex. 6, pp.24:12-25:22; Ex. 2 at 10:51:460-10:52; Ex. 2 at 10:33:52-10:53:55). When Lerch Bates inspected the unit on September 19, 2018 they found no evidence that the combs sat above the treads. And when Johnson conducted his site inspection, the comb teeth sat below the tread. (Ex. 4, p.40:1-4). Simply put, all of the evidence, all of the established facts, rebut Mr. Johnson's speculation; none support it.

As with the two prior issues, Johnson's opinions regarding the position of the combs is unreliable because no analysis, testing, modeling or recreation of any kind was done; his opinions are irrelevant because they are not helpful to the jury; and his opinions violate FRE 403 because their probative value (zero) is substantially outweighed by the danger of unfair prejudice, confusion and misleading the jury. For these reasons, Johnson should be precluded from offering any opinions regarding the position of the combs.

**D. Johnson's opinions regarding medical causation, or the extent of Jayden's injury, are clearly not within the scope of his expertise.**

Johnson offers two medical causation opinions: first, that Jayden's injuries would have been reduced if Dillard's had installed a comb impact switch (Ex. 3, p.7, last paragraph); and second, that Jayden would not have been injured if the combs sat below the stair tread (Ex. 3, p.8

– Finding 8). These opinions should be excluded because: (1) Johnson does not have sufficient knowledge, training, education, or experience in any medical or medical causation field to render such an opinion, and (2) even if he had the requisite knowledge, training, education, or experience, his opinions are not based on any actual facts or data, they are not the product of any testing (or any other reliable principles or methods), and they are far too speculative to assist the jury.

As Mr. Johnson readily admits, he is not a biomechanical engineer or medical doctor. He has never worked on a case involving a baby whose finger lodged in a step or comb. (Ex. 4, pp.105:22-106:11). Further, he admits that the escalator stopped in seconds. (Ex. 4, p.42:9-13). He has also not performed any testing, calculations, or recreations of any kind with respect to these extremely speculative opinions. And since no one has done any testing, modeling or accident recreation, he cannot estimate how much faster it would have stopped with additional safety devices in place. Regardless, since Johnson has no medical degree or medical training, his opinions about what injury Jayden could or would have sustained is all guesswork. Rank speculation. Nothing more, nothing less. *See, e.g. Thomas v. Chambers,* 2019 U.S. Dist. LEXIS 65900 at \*10-11 (E.D. La. 4/17/19) (biomechanical expert who was not certified in any medical specialty nor a medical doctor was not qualified to offer medical opinions regarding the "precise cause of a specific injury").

Johnson does not have any medical causation education, training, knowledge, or experience. He is therefore not qualified to render an opinion regarding the cause(s) of Jayden's injuries or theoretical injuries. Even if he were qualified to render such an opinion, his opinion(s) are not based on any specific facts or data, they have not been tested, and they are not the product of any reliable principles or methods. This Court should exclude Johnson's opinions

about what type(s) of injuries Jayden may have sustained if different features existed on the escalator.

## CONCLUSION

The Federal Rules of Evidence ensure that the jury only receives experts who can offer reliable and relevant evidence. Having some knowledge, education or experience does not give one carte blanche to spout unbridled speculation or baseless opinions about topics far outside one's professed scope. But that is the most Mr. Johnson can offer. His opinions do not meet the standard for reliability or relevance under FRE 702, and they are unfairly prejudicial, confusing, misleading and a waste of time under FRE 403. For these reasons and as set forth above, Dillard's respectfully moves this Honorable Court to strike Mr. Johnson as a witness.

Respectfully submitted,

/s/ *Lambert J. Hassinger, Jr.*
LAMBERT J. HASSINGER, JR. T.A. (#21638)
jhassinger@gallowaylawfirm.com
Alicia R. Aguillard (#36349)
aaguillard@gallowaylawfirm.com
GALLOWAY, JOHNSON, TOMPKINS,
    BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone:  (504) 525-6802
Facsimile:  (504) 525-2456

## CERTIFICATE OF SERVICE

I CERTIFY that on the 12th day of October, 2020, this document was filed electronically with the Clerk of Court using the CM/ECEF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ *Lambert J. Hassinger, Jr.*
Lambert J. Hassinger, Jr.