UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHEA FALGOUT, ET AL.                                          CIVIL ACTION

VERSUS                                                              No. 20-57

HIGBEE LANCOMS, LP                                           SECTION I

ORDER & REASONS

Before the Court is a motion[1] filed by defendant Higbee Lancoms, LP[2] ("Dillard's") to exclude expert testimony by Shawn Johnson ("Johnson") pursuant to Federal Rules of Evidence 702 and 403. Johnson is a proposed expert on escalators for plaintiffs Shea Falgout ("Falgout"), Sierra Crews, and April Porche (collectively, "plaintiffs"). Plaintiffs oppose the motion.[3] For the following reasons, the motion is denied without prejudice to being re-urged at trial, except that it is granted as to any opinion Johnson might offer about the relationship between potential safety improvements and the severity of J.F.'s injuries.

I. BACKGROUND AND FACTS

This case arises from injuries allegedly suffered by a minor, J.F., on September 18, 2018, when he was fourteen-months old.[4] Plaintiffs allege that J.F. "fell on the

---

[1] R. Doc. No. 50.
[2] Higbee Lancoms, LP does business as Dillard's Department Stores, Inc.
[3] R. Doc. No. 57 (plaintiffs' opposition).
[4] R. Doc. No. 14 (amended complaint); R. Doc. No. 1, at 3 (notice of removal); R. Doc. No. 50-1, at 2.

escalator between the second and first floor" of the Dillard's department store and "suffered traumatic amputation of his long finger and ring finger of his left hand."[5]

Plaintiffs' witness list identifies Johnson as an expert witness.[6] Johnson's C.V. indicates that he has extensive experience working with escalators and elevators.[7] Johnson is a member of the American Society of Mechanical Engineers ("ASME"),[8] and "has been trained on all applicable ASME codes for escalators."[9]

## II. LEGAL STANDARDS

### A. Federal Rule of Evidence 702

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides that a witness who is "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if" (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based upon sufficient facts or data;" (3) "the testimony is the product of

---

[5] R. Doc. No. 1-1, at 3 (copy of petition for damages filed in Terrebonne Parish, Louisiana).
[6] R. Doc. No. 45, at 2.
[7] R. Doc. No. 57-1, at 1.
[8] *Id.* at 1–2.
[9] R. Doc. No. 57, at 2.

reliable principles and methods; and" (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

"To qualify as an expert, 'the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)) (internal alterations omitted). "Additionally, [Rule] 702 states that an expert may be qualified based on 'knowledge, skill, experience, training, or education[.]'" *Id.* at 524 (quoting Fed. R. Evid. 702); s*ee also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999) (discussing witnesses whose expertise is based purely on experience).

"Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.* (citing *Daubert*, 509 U.S. at 596).

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702[.]" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment of "whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147.

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique can be or has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *See Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (emphasis omitted) (quoting *Kumho Tire*, 526 U.S. at 152)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

In order to satisfy Rule 702, proposed expert testimony must be relevant "not simply in the [way] all testimony must be relevant [pursuant to Rule 401], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). Expert testimony is unnecessary where a jury can "adeptly assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

4

When expert testimony is challenged under Rule 702 and *Daubert*, the burden rests with the party seeking to present the testimony. *See Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

### B. Federal Rule of Evidence 403

Federal Rule of Evidence 403 states, in full:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (citation omitted).

### III. ARGUMENTS AND ANALYSIS

Dillard's argues that Rules 702 and 403 require that Johnson be barred from appearing as an expert witness regarding escalator safety "because his opinions have no factual support" and, therefore, "his opinions are unreliable" and "irrelevant[.]"[10] As discussed below, the Court finds that Johnson is qualified to offer expert testimony as to escalator safety. The Court declines to rule on Dillard's arguments regarding the foundation of Johnson's findings, Rule 403 concerns, or the relevancy of Johnson's findings at this time. As such, it will not address them further.

---

[10] R. Doc. No. 50, at 1.

Dillard's also argues that Johnson's "opinions as to medical causation fall far outside of his purported expertise."[11] As discussed below, the Court concludes that Johnson is not qualified to offer expert testimony regarding J.F.'s injuries and how different safety measures might have impacted their severity.

Dillard's argues that Johnson's opinions that (1) J.F.'s "injuries would have been reduced . . . if a comb impact switch" had been installed and that (2) J.F. "would not have been injured if the combs sat below the stair tread" should be excluded.[12] Dillard's argues this is so because:

> (1) Johnson does not have sufficient knowledge, training, education, or experience in any medical or medical causation field to render such an opinion, and (2) even if he had the requisite knowledge, training, education, or experience, his opinions are not based on any actual facts or data, they are not the product of any testing (or any other reliable principles or methods), and they are far too speculative to assist the jury.[13]

To support its argument that Johnson is unqualified to offer such opinions, Dillard's cites *Thomas v. Chambers,* No. 18-4373, 2019 WL 1670745, at *3–*4 (E.D. La. Apr. 17, 2019) (Vance, J.). According to Dillard's, that court found that neither a biomechanical expert nor a medical doctor were qualified to offer medical opinions about "the precise cause of a specific injury[.]"[14] Dillard's argues that it would be

---

[11] *Id.*; *see id.* at 6 (referring to Johnson's opinions that "if Dillard's had installed additional safety devices, [J.F.]'s injuries would have been 'reduced,' and with a proper comb plate setting, [J.F.] 'would not have been injured.'").
[12] *Id.*
[13] *Id.* at 12–13.
[14] *Id.* at 13.

6

similarly inappropriate for Johnson to offer opinions "about what type(s) of injuries [J.F.] may have sustained if different features existed on the escalator."[15]

### A. Qualifications

Johnson has extensive experience working with escalators and elevators.[16] Dillard's argument about his lack of formal education is irrelevant.[17] Rule 702 recognizes that expertise may stem from experience, not only formal education. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (stating that "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience") (quoting Fed. R. Evid. 702 advisory committee's note); *id.* ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.") (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999)).

### B. Reliability and Relevance

With respect to Johnson's opinions pertaining to J.F.'s injury, the Court finds *Thomas*, cited by Dillard's, to be instructive. 2019 WL at *4. In that case, the court noted that "[f]ederal courts have found that biomechanical engineering experts . . . are qualified to offer opinions on 'what injury causation forces are in general' and 'how a hypothetical person's body will respond to those forces,' but are 'not qualified to render medical opinions regarding the precise cause of a specific injury.'" *Id.* (citations omitted). Therefore, the *Thomas* court determined that the expert whose

---

[15] *Id.* at 13–14.
[16] R. Doc. No. 57-1, at 1–6.
[17] R. Doc. No. 50-1, at 1.

testimony was being challenged could "testify only to 'the amount of force he believes was generated by the accident and the observed effect of such force on a hypothetical human body in a comparable accident[,]'" but that the expert could not "offer an opinion on whether the estimated forces plaintiffs experienced during the collision in fact caused their injuries." *Id.* Johnson may not testify as to the cause of J.F.'s specific injuries as the jury is perfectly capable of determining causation without such opinion.[18] This opinion does not exclude testimony by Johnson as to the purpose of safety improvements and the connection between those improvements and the hypothetical kind of injury that someone in J.F.'s shoes may suffer.

### IV.

Accordingly,

**IT IS ORDERED** that the motion is **DENIED WITHOUT PREJUDICE** to being re-urged at trial, except that it is **GRANTED** with regards to any testimony by Johnson regarding medical causation, as set forth in this opinion.

New Orleans, Louisiana, December 3, 2020.

                                                  **LANCE M. AFRICK**
                                  **UNITED STATES DISTRICT JUDGE**

---

[18] *See id.* at 8 ("I believe this comb section was set too high and the tooth of the comb skewered [J.F.]'s finger and then broke pulling his hand into the unit. As [J.F.]'s hand was entering under the combplate the pressure caused the entire comb section to break.").