## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHEA FALGOUT, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 20-57** |
| **HIGBEE LANCOMS, LP** | **SECTION I** |

## <u>ORDER & REASONS</u>

Before the Court are two motions for summary judgment filed by defendant Higbee Lancoms, LP ("Dillard's").[1] The first[2] seeks to dismiss plaintiff April Porche's ("Porche") bystander claim. The second[3] seeks to dismiss the remaining claims of Shea Falgout, the father and tutor of minor J.F., and Sierra Crews, J.F.'s mother (collectively, "plaintiffs").[4] For the following reasons, both motions are denied.

## I. BACKGROUND

This case arises from injuries allegedly suffered by a minor, J.F., when he was fourteen-months old.[5] Plaintiffs allege J.F. "fell on the escalator between the second and first floor" of a Dillard's department store and "suffered traumatic amputation of his long finger and ring finger of his left hand."[6]

---

[1] Higbee Lancoms, LP does business as Dillard's Department Stores, Inc. *See* R. Doc. No. 14, at 1–2.
[2] R. Doc. No. 51.
[3] R. Doc. No. 52.
[4] R. Doc. No. 1-1, at 3 (state court pleadings).
[5] R. Doc. No. 52-2, at 2.
[6] R. Doc. No. 1-1, at 3.

Porche, J.F.'s grandmother, witnessed the accident.[7]  Because she allegedly suffered severe mental pain and anguish as a result, Porche filed a bystander claim against Dillard's under La. Civ. Code art. 2315.6(B).[8]  That statute provides a claim for damages "for mental anguish or emotional distress" for those who "view an event causing injury to another person." *Id.* art. 2315.6(A).  To recover, plaintiffs asserting this claim must be close relatives of the person who was injured, *id.*, and they must show that their mental anguish or emotional distress is "severe, debilitating, and foreseeable," *id.* art. 2315.6(B).  Dillard's moves for summary judgment on Porche's claim because she was an employee at Dillard's at the time of the accident—limiting

---

[7] R. Doc. No. 51-2, at 1.

[8] R. Doc. No. 1-1, at 3.  The other plaintiffs have also brought bystander claims against Dillard's.  *Id.* at 5.  Article 2315.6 provides, in full:

> A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:
>
>> (1) The spouse, child or children, and grandchild or grandchildren of the injured person, or either the spouse, the child or children, or the grandchild or grandchildren of the injured person.
>> (2) The father and mother of the injured person, or either of them.
>> (3) The brothers and sisters of the injured person or any of them.
>> (4) The grandfather and grandmother of the injured person, or either of them.
>
> B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.

2

her to recovery through workers' compensation[9]—and because she allegedly cannot prove that her mental distress has been severe and debilitating.[10]

Shea Falgout, in his capacity as tutor of J.F., alleges negligence against Dillard's, pleaded alternatively under La. Civ. Code arts. 2322[11] and 2317.[12]  Article 2322 provides that "[t]he owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction."[13]  However, a building owner is liable under Article 2322 only if the plaintiff proves the owner knew or should have known of the ruin, disrepair, or defect.  La. Civ. Code art. 2322.

Article 2317 provides a similar claim to Article 2322, but it applies specifically to "thing[s]."  Since modified by the addition of Article 2317.1[14] in 1996, it provides a

---

[9] R. Doc. No. 51-2, at 1 (arguing Porche's sole remedy is workers' compensation).

[10] *Id.* at 9.

[11] R. Doc. No. 1-1, at 4 ¶ 10.

[12] *Id.* at 4 ¶ 11.  Article 2317 provides, in full: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications[, as provided in Article 2317.1]."

[13] Article 2322 provides, in full:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

[14] Article 2317.1 requires proof of actual or constructive knowledge of the danger that caused the damage.  Article 2317.1 provides, in full:

damages claim against "[t]he owner or custodian of a thing" that, "by its ruin, vice, or defect," "occasioned" the plaintiff's damage, so long as the plaintiff proves the defendant "knew or, in the exercise of reasonable care, should have known[,] of the ruin, vice, or defect which caused the damage."   La. Civ. Code art. 2317.1.   As discussed further below, Dillard's moves for summary judgment on J.F.'s negligence claim.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. Proc. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*,

---

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

*See also* 12 La. Civ. L. Treatise, Tort Law §§ 25:2–3 (2d ed.) (explaining that, prior to the addition of Article 2317.1 in 1996, Article 2317 allowed for strict liability).

780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *See Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

## III. ARGUMENTS & ANALYSIS

### A. Porche's Bystander Claim Survives

Dillard's offers two arguments for summary judgment on Porche's bystander claim: (1) Porche must seek relief in workers' compensation, and (2) because Porche has failed to list any expert witnesses who could testify that her mental anguish is severe and debilitating, she will be unable to prove her bystander claim.

### 1. Porche May Pursue her Claim in Tort

Dillard's first argues that workers' compensation is Porche's exclusive remedy. According to Dillard's, because Porche's injury arose out of and in the course of her employment at Dillard's, she is barred from proceeding in tort.[15]   La. Stat. § 23:1031(A); *id.* § 23:1032(A)(1)(a).   The Court disagrees.

Assuming without deciding that there are no genuine and material factual disputes as to whether this injury qualifies for workers' compensation, and reading all "justifiable inferences" from the record in Porche's favor, *Anderson*, 477 U.S. at 248, the Court finds that Dillard's is not entitled to summary judgment.

Under the Louisiana Workers' Compensation Act, for an injury to qualify for workers' compensation—and trigger the Act's exclusive remedy provision—the employee's injury must (1) arise out of and (2) occur in the course of employment.   La. Stat. §§ 23:1031(A), 23:1032.   Further, "[w]hen the employer seeks to avail itself of tort immunity under Section 1032, the employer has the burden of proving

---

[15] R. Doc. No. 51-2, at 3.

6

entitlement to immunity." *Tucker v. Ne. Louisiana Tree Serv.*, 665 So. 2d 672, 677 (La. Ct. App. 2d Cir. 1995).

An injury "arises out of" employment if an employee is more likely to encounter the injury-causing risk than is a member of the general public. *See, e.g., Mundy v. Dep't of Health & Human Res.*, 593 So. 2d 346, 349 (La. 1992); *Sislo v. New Orleans Ctr. for Creative Arts*, 198 So. 3d 1202, 1207 (La. Ct. App. 4th Cir. 2016). Courts determine whether an injury occurred "in the course of" employment "principal[ly]" by considering the "time, place and employment activity" surrounding the injury. *Mundy*, 593 So. 2d at 349; *see also Harris v. Wal-Mart Stores, Inc.*, 205 F.3d 847, 848 (5th Cir. 2000). While both the "arising out of" and "in the course of" prongs must be shown, a weak or neutral showing of one can be overcome by a strong showing of the other. *Mundy*, 593 So. 2d at 351 (holding that the "neutral nature" of the arising out of prong meant that a "strong showing" of the in the course of employment prong was needed).

Starting with the arising out of prong, Dillard's argues that because Porche's "risk of injury resulting from a defect in the escalator was higher than that of the general public"—*i.e.*, as an employee, Porche encountered the escalator's risks more frequently than the general public—"one can confidently conclude that Porche's injuries arose out of her employment with Dillard's."[16] That misses the point.

Porche may well have been at greater risk of *physical injury to herself* due to her increased exposure to the escalator. *See Mitchell v. Brookshire Grocery Co.*, 653

---

[16] R. Doc. No. 51-2, at 6.

7

So. 2d 202, 205 (La. Ct. App. 2d Cir. 1995) (holding that an employee was more likely to encounter a pothole in employer's parking lot than the general public).  But that says nothing about the risk of the injury she actually alleges: mental anguish resulting from witnessing the "traumatic amputation of two [of her *grandson's*] fingers only several feet away."[17]  That is, Dillard's does not suggest its employees are more frequently accompanied by their grandchildren in this workplace than are Dillard's patrons or the public generally, and that makes a difference.  In other words, "the risk which gave rise to the injury was not greater for [Porche] than for a person not so employed." *Mundy*, 593 So. 2d at 350.

Accordingly, the Court finds that the "arising out of" prong does not support Dillard's argument.  Consequently, Dillard's must make a "strong showing" of the "in the course of employment" prong to prevail. *Id.* at 351.

The Court finds that Dillard's has not made that strong showing.  Again, Louisiana courts consider the "time, place and employment activity" surrounding the injury to determine course of employment. *Id.* at 349.  As for time: Porche clocked out from her morning shift two minutes prior to the accident.[18]  This factor weighs in Dillard's favor.  The accident occurred close in time to Porche's working hours, and courts tend to provide some leeway as to time. *See, e.g., Serrano v. Otis Elevator Co.*, No. 16-15460, 2017 WL 479576, at *5 (E.D. La. Feb. 6, 2017) (Vance, J.) (finding that off-duty employees would still qualify for workers' compensation when incident

---

[17] R. Doc. No. 53, at 7.
[18] *Id.* at 1 (citing Ex. 1, at 11–12).

occurred "shortly after they finished their shifts"); *Mitchell*, 653 So. 2d at 205 (finding the accident occurred in the course of employment even though it was "not clear . . . how much time lapsed" between clocking out and the accident).

As for place: at the time of the accident, Porche was on Dillard's premises allegedly near the base of the escalator that injured her grandson.[19]  The Court finds this factor to be neutral, as Dillard's fails to show that Porche was assigned to work in that precise location.  Although Dillard's argues it should suffice that Porche was "on the premises,"[20] courts take a more nuanced approach.  *See Bosse v. Westinghouse Elec., Inc.*, 637 So. 2d 1157, 1159 (La. Ct. App. 4th Cir. 1994) (taking into account the floors on which the plaintiff (1) worked and (2) was injured); *Mundy*, 593 So. 2d at 350 (same); *Harris*, 205 F.3d at 849 (considering where in the store the plaintiff was assigned to work).

As for employment activity: immediately after clocking out, Porche met with members of her family, and they planned to leave Dillard's to have lunch together.[21] This weighs strongly in Porche's favor.  Dillard's does not contend that this was an employment-related activity, but instead argues merely that employees are "in the course of [their] employment for a reasonable period of time while still on the employer's premises."[22]   That blurs the lines too much—either this was an

---

[19] *Id.* at 6.  Although neither party has stated, with record support, exactly where Porche was when the accident occurred, both parties apparently agree that Porche "witnessed" J.F. "sustain injuries" from the escalator.  R. Doc. No. 51-2, at 1; R. Doc. No. 53, at 1.  The Court infers she was somewhere near the base of the escalator.
[20] R. Doc. No. 51-2, at 9.
[21] *Id.* at 7 (citing Ex. 1, at 11, 17).
[22] *Id.* at 9.

employment activity or it was not. The Court finds the latter. Accordingly, the activity factor weighs against Dillard's, nullifying the time finding.

Altogether, Dillard's has failed to make the strong showing required. Therefore, the Court finds that Porche's injury did not arise out of and in the course of her employment. Her claim may proceed in tort.

### 2. Porche May Be Able to Prove Severe and Debilitating Mental Anguish

Dillard's next argues that, even if Porche was not barred from making her tort claim, she will not be able to prove her injuries rise to the level of "severe and debilitating"—requisites for a bystander claim. *See* La. Civ. Code art. 2315.6(B). According to Dillard's, because Porche failed to list any "heath [sic] care provider as a trial witness . . . she cannot establish that she sustained any injury from this accident . . . ."[23]

Dillard's cites no cases holding that expert testimony or proof of a clinical diagnosis is required to prove a bystander claim, and the Court has discovered none. To the contrary, awards for bystander claims have been affirmed even where there was no diagnosis or other clinical proof of a psychiatric disorder. *See, e.g.*, *Blair v. Tynes*, 621 So. 2d 591, 601 (La. 1993) (collecting cases and holding that proof of a clinical diagnosis is not *per se* required). Even courts reversing bystander verdicts for insufficient evidence note that expert proof of clinical diagnoses is not necessarily required. *Magee v. Pittman*, 761 So. 2d 731, 752 n.7 (La. Ct. App. 1st Cir. 2000); *cf.*

---

[23] *Id.* at 10.

*Norred v. Radisson Hotel Corp.*, 665 So. 2d 753, 759 (La. Ct. App. 1st Cir. 1995) (considering entire record, plaintiffs did not meet their burden).

Of course, Porche's claim could be more difficult to prove without an expert witness. But that does not mean a "reasonable jury" is incapable of finding for her—which is all that is required to make a fact issue "genuine." *Anderson*, 477 U.S. at 248. Porche was timely noticed as a trial witness. In her deposition, Porche testified that she has recurrent thoughts about the accident, and that she has suffered anxiety, worry, insomnia, and panic attacks.[24] The jury is more than capable of determining whether her testimony demonstrates the "severe" and "debilitating" mental distress required by statute. The Court therefore finds that there is a genuine issue of material fact as to whether Porche's mental anguish is sufficiently severe and debilitating to support a bystander claim.

## B. The Remaining Plaintiffs' Claims Survive

Dillard's argues the remaining plaintiffs' claims should be dismissed because they "fail to prove a breach of care or that their alleged damages were caused by a breach of care."[25] Specifically, Dillard's argues there is no dispute as to whether: (1) Dillard's had a duty to modernize the escalator under industry standards,[26] (2) the

---

[24] R. Doc. No. 53, at 7 (citing Ex. 1, at 45, 82–83, 48). Porche also testified that she was hospitalized in June 2020 following a suicide attempt, *id.* (citing Ex. 1, at 32–34), and that she was prescribed medications by a psychiatrist starting in June 2019, *id.* (citing Ex. 1, at 40–42). However, the portions of the record cited by Porche for these developments do not state that they were caused by the accident.

[25] R. Doc. No. 52-2, at 5.

[26] *Id.* at 8.

escalator was defective or, instead, "worked as it was designed,"[27] and (3) the plaintiffs can prove that any alleged defect caused their injuries.[28]   The Court concludes there are genuine disputes of material fact as to all three of these questions.

### 1. Whether There was a Duty to Modernize the Escalator

Dillard's does not articulate what it believes to be the proper standard of care for modernizing its escalator—or escalators generally.[29]   Dillard's argues only that it had no duty to "add additional safety switches" and thereby modernize the escalator.[30]   But Dillard's does appear to accept the plaintiffs' premise: industry standards should bear on defining its duty.[31]   The Court agrees.   *See, e.g.*, *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180–81 (5th Cir. 1975) ("Evidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence.").

And Dillard's apparently agrees with the plaintiffs that an escalator safety regulations code—the American Society of Mechanical Engineers' Code, A17.1 1965 ("Code")—should tell us something about Dillard's duty.[32]   But Dillard's disputes what that Code requires of it.[33]   It argues that the Code does not "require[] Dillard's

---

[27] *Id.* at 5.

[28] *Id.* at 10–11.

[29] *See id.* at 8–12.  The plaintiffs, on the other hand, cite *Broussard*, a case involving a faulty elevator, to contend that Dillard's owes a "'high degree of care' . . . analogous to the degree of care imposed upon common carriers." R. Doc. No. 58, at 8 (quoting *Broussard v. State ex rel. Office of State Bldgs.*, 113 So. 3d 175, 186 (La. 2013) (citations omitted)).

[30] R. Doc. No. 52-2, at 9.

[31] *See id.* at 8–9.

[32] R. Doc. No. 52-1, at 3 ¶¶ 21–22.

[33] R. Doc. No. 52-2, at 8.

to modernize its escalator to add comb impact switches."[34]  The Code, however, as quoted in the report of Shawn Johnson ("Johnson"), the plaintiffs' escalator expert, specifically lists "[i]mproved technology" as one factor escalator owners should consider when developing an escalator maintenance program.[35]

The Court finds this raises at least a genuine issue of material fact as to what the applicable industry standards are regarding the modernization of escalators, as well as issues relating to proper escalator maintenance.  Accordingly, there is a genuine issue of material fact, which must be resolved by the jury.

### 2. Whether the Escalator Worked as Designed

Dillard's cites two items in the record to argue that there is no dispute as to whether the escalator malfunctioned on the day of J.F.'s accident.  Dillard's first cites the deposition of its escalator technician, Lawrence Robert ("Robert"), who it says inspected the escalator on the morning of the accident and deemed the escalator to be "in proper working condition."[36]  The plaintiffs point out, however, that Robert admitted his work "is limited to preventative maintenance tasks and repairs when called out on a work order."[37]  The plaintiffs appear to suggest that Robert's assessment of the escalator may have been mistaken.  Whether that is true is an issue for the jury to decide, not the Court on summary judgment.

---

[34] R. Doc. No. 52-2, at 8–9.
[35] R. Doc. No. 50-4, at 6.
[36] R. Doc. No. 52-2, at 5 (citing Ex. 6, at 85).
[37] R. Doc. No. 58, at 3 (citing Ex. 5, at 77).

Dillard's also cites the Lerch Bates report—a report created the day after the accident by a third-party inspection company—and argues that "[t]he escalator worked as designed and within Code requirements."[38]  The plaintiffs, on the other hand, cite a Dillard's surveillance video that captured the accident, which appears to show a raised, if not broken, comb plate immediately after the accident.[39] Considering this mixed evidence, the Court finds that a genuine issue of material fact exists.

### 3. Whether the Plaintiffs Can Prove Causation

Dillard's final argument is that the plaintiffs will not be able to prove "medical causation" without an "engineer, biomechanical expert or medical doctor" who can testify as to causation.[40]  It argues that the plaintiff's expert, Johnson, is not qualified to testify as to medical causation, and thus the plaintiffs will lose as a matter of law.[41] Further, because the surveillance video is allegedly not clear enough, Dillard's argues the jury will not be able to find causation based on it alone.[42]

As the Court noted in its December 3, 2020 Order and Reasons, Johnson is able to testify regarding the purpose of his proposed safety improvements and the connection between those improvements and the hypothetical kind of injury that someone in J.F.'s shoes may suffer.[43]  After considering that expert's opinion, it will

---

[38] R. Doc. No. 52-2, at 6.
[39] R. Doc. No. 58, at 5 n.20 (first video on the hyperlink's landing page, at 0:37); *see also id.* at 6 (describing the comb as it appears in the video).
[40] R. Doc. No. 52-2, at 10.
[41] *Id.* at 10–11.
[42] *Id.* at 10.
[43] R. Doc. No. 73, at 8.

be for the jury to decide whether Dillard's failure to take such steps caused J.F.'s injuries.   Given Johnson's depth of expertise in this area,[44] it would not be unreasonable for a jury to find as much.   As for the video, it is for the jury to decide— not the Court on summary judgment—to what extent the video should be considered and which conclusions can be drawn from it.   Therefore, the Court finds that the issue of causation is a genuine issue of material fact.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Dillard's motions for summary judgment are **DENIED**.

New Orleans, Louisiana, December 14, 2020.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[44] *Id.* at 7.